UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-21160-CIV-GOLD/WHITE

RICARDO MAURICIO BERNAL PALACIOS,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

**OMNIBUS ORDER UPON REMAND; ADOPTING REPORT AND
RECOMMENDATION [ECF No. 23]; DENYING MOTION
<u>TO VACATE [ECF No. 1]; CLOSING CASE</u>**

This cause is before the Court on mandate of the Eleventh Circuit Court of Appeals [ECF No. 55], in which the Eleventh Circuit remanded the case to me to conduct a de novo review of all of Petitioner Ricardo Manuel Bernal Palacios' objections [ECF No. 28] to Magistrate Judge Patrick A. White's Report and Recommendation [ECF No. 23] ("Report"). I held oral argument on June 29, 2012, and conducted a limited evidentiary hearing on August 31, 2012. For the reasons stated herein, I adopt Judge White's Report and deny Palacios' Motion to Vacate, Set Aside and/or Correct Judgment and Sentence Pursuant to 28 U.S.C. § 2255 [ECF No. 1].

**I.    Procedural History**

On February 7, 2006, the grand jury returned an indictment charging Palacios with conspiracy to launder monetary instruments in violation of 18 U.S.C. §1956(h) (Count 1); laundering of monetary instruments of specified unlawful activity, in violation of 18 U.S.C. §1956(a)(1)(A)(i) (Counts 2-31); laundering of monetary instruments of specified unlawful activity, in violation of 18 U.S.C. §1956 (a)(2)(A) (Counts 32-48); and

conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841 and 846 (Count 49).  By way of a written plea agreement [ECF No. 8-6], Palacios pled guilty to Counts 1, 2-31, 32-47, and 48 on August 28, 2007.

On May 22, 2008, I sentenced Palacios to 210 months imprisonment and dismissed Count 49.  The clerk entered judgment on May 28, 2008.  Palacios did not appeal the judgment, and on April 24, 2009 filed the instant Motion to Vacate, raising seven grounds for relief:

Ground 1:   Petitioner did not knowingly, intelligently, or voluntarily plead guilty due to counsel's misrepresentation of the plea agreement;

Ground 2:   Ineffective assistance of counsel for failing to file a motion to withdraw guilty plea and plea agreement;

Ground 3:   Ineffective assistance of counsel for failing to file a motion to compel government to file a §5K1.1 motion for downward departure;

Ground 4:   Ineffective assistance of counsel for failing to file a §5K2 motion for downward departure;

Ground 5:   Ineffective assistance of counsel for failing to file a motion to enforce the plea agreement and failing to object to government's breach of the agreement;

Ground 6:   Petitioner is actually innocent in light of *United States v. Santos*; and

Ground 7:   Ineffective assistance of counsel for failing to file a direct appeal.

On February 9, 2010, Magistrate Judge White conducted an evidentiary hearing on Ground 7 (Palacios' argument that counsel was constitutionally ineffective for failing to file a direct appeal) [ECF Nos. 13, 25], and subsequently issued a Report and Recommendation [ECF No. 23] recommending denial of the habeas petition on all grounds.  Palacios, represented by counsel, objected [ECF No. 28] ("Objections") on five of the seven grounds (Palacios did not object to Grounds 3 and 4, regarding

motions for downward departure). The United States responded to the Objections [ECF No. 29], and I adopted the Report and dismissed the habeas petition on March 31, 2010 [ECF No. 30]. Palacios timely appealed [ECF No. 31].

The Eleventh Circuit reviewed the Report, Palacios' Objections, and my March 31, 2010 Order and concluded I did not conduct a de novo review of Palacios' Objections. In an opinion dated December 9, 2011 by mandate issued February 3, 2012, the Eleventh Circuit vacated and remanded with an instruction to conduct a de novo review of all of Palacios' Objections [ECF No. 55].

On June 29, 2012, I held oral argument on Palacios' Objections [ECF No. 70]. During oral argument, it was agreed that an evidentiary hearing on Ground 5, concerning the government's breach of the plea agreement, was warranted. I requested supplemental briefing on certain issues relating to Ground 5 [ECF Nos. 71, 75, 79, 83], and, on August 31, 2012, conducted an evidentiary hearing on Ground 5 [ECF No. 89].

## II.   Motion for Leave to Amend and Supplemental Objections

After the Eleventh Circuit's opinion was entered on the Eleventh Circuit docket, but before mandate issued, Palacios filed in the district court a *pro se* Motion for Leave to Amend under Rule 15(a) [ECF No. 51, filed December 22, 2011], seeking leave to add claims he argues arose out of the February 9, 2010 evidentiary hearing in front of Magistrate Judge White. Approximately one month later, on January 30, 2012, Palacios, through counsel, filed Supplemental Objections [ECF No. 53], providing additional explanation and objections to Grounds 1, 2, and 5-7, and for the first time

objecting to Grounds 3 and 4.[1]   I requested additional briefing on whether I have jurisdiction to consider, and otherwise should consider, the Motion for Leave to Amend and Supplemental Objections [ECF Nos. 54, 56, 60] and the parties responded [ECF Nos. 59, 63, 65].

The government argues the mandate rule and law of the case doctrine bar my consideration of Palacios' Motion for Leave to Amend and Supplemental Objections [ECF No. 63].  *See United States v. Davis*, 329 F.3d 1250, 1252 (11th Cir. 2003) ("If the appellate court issues a limited mandate … the trial court is restricted in the range of issues it may consider on remand.").  "The law of the case doctrine, self-imposed by the courts, operates to create efficiency, finality and obedience within the judicial system." *United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996).  "The mandate rule is simply an application of the law of the case doctrine to a specific set of facts."  *Id.*  A district court must follow the Eleventh Circuit's mandates and not assert jurisdiction over matters outside the scope of a limited mandate.  *Id.* (citation omitted).  To that end, "[a] district court when acting under an appellate court's mandate, cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded."  *Id.* (citation omitted).  While the

---

[1]  In his Response to Order to Show Cause Why Motion to Amend and Supplemental Objections Should Not be Stricken [ECF No. 59], Palacios' counsel states, "The supplemental objections were filed for the purpose of amplifying and explaining the initial timely filed objections and to provide this Court with additional decisional authority supporting those objections."  [ECF No. 59, p. 2].  If this were true, it would make no difference whether I considered the Supplemental Objections, as I have already been instructed to conduct a de novo review of the timely-filed Objections.

mandate rule prohibits a district court from interfering with the Eleventh Circuit's mandate, it does not preclude a district court from addressing "as a matter of first impression, those issues not disposed of on appeal," or those that are "outside the scope of the prior appeal." *Anderson v. United States*, 194 F. App'x 745, 746 (11th Cir. 2006) (citing *Transam. Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005)).

In *Anderson v. United States*, the Eleventh Circuit applied the law of the case doctrine and the mandate rule to the remand of a § 2255 habeas petition "for the district court to resolve ground one of Anderson's § 2255 motion, which it had failed to consider the first time." *Anderson*, 194 F. App'x at 747. Ground one alleged trial counsel provided ineffective assistance of counsel when he threatened the prosecuting attorney, thereby adversely affecting plea negotiations. *Id.* at 745. On remand, Anderson moved for leave to amend his § 2255 motion to add a claim that trial counsel was ineffective for failing to inform him of pre-trial and trial offers. *Id.* at 746. Because the court did not, on appeal, consider the merits of the new ineffective assistance of counsel or direct the district court not to permit Anderson to amend his § 2255 motion, the Eleventh Circuit held the district court could rule on the motion. *Id.*

Applying the mandate rule and relevant case law to the instant matter, I conclude I have jurisdiction to consider Palacios' Motion for Leave to Amend, but lack jurisdiction to consider the Supplemental Objections. As in *Anderson*, the Eleventh Circuit did not, on appeal, consider the merits of Palacios' Motion for Leave to Amend, or otherwise state I should not consider the Motion on remand. The Eleventh Circuit's mandate did, however, speak to the objections that were before the court, and required me to "conduct a *de novo* review of all of Palacio's objections." [ECF No. 55, p. 8]. The

mandate does not instruct me to conduct a de novo review of all of Palacios' claims or all of Magistrate Judge White's recommendations.  Palacios' initial Objections [ECF No. 29] are the sole subject of the Eleventh Circuit's mandate, and, acting under this mandate, I may not "vary it," "give any other or further relief," or "intermeddle with it, further than to settle so much as has been remanded."  *Tamayo*, 80 F.3d at 1520.  Per the mandate rule, I lack the ability to consider the Supplemental Objections.[2]  Nonetheless, assuming I am incorrect concerning the scope of the Mandate and to avoid further technical objections, I address in this Order the Supplemental Objections on the merits.

Turning to the merits of Palacios' Motion for Leave to Amend [ECF Nos. 51, 43], Palacios seeks in the Motion to add an argument that, due to an internal policy decision of the United States Attorney's Office, the government never intended to allow Palacios to cooperate.  As such, Palacios argues, (1) the plea agreement is premised upon the false promise of cooperation and is invalid, (2) the government breached the plea agreement, which includes a provision regarding cooperation, by never intending to allow cooperation, (3) Palacios' guilty plea is invalid, and (4) Palacios was deprived effective assistance of counsel because the government never disclosed to Palacios' counsel the policy decision to not allow him to cooperate.  Palacios bases his motion on statements of Assistant United States Attorney Anthony Lacosta at the February 9, 2010 evidentiary hearing.  Upon review of the transcript from the hearing and the parties' arguments, I conclude Palacios' claim is baseless and deny the Motion for

---

[2] Alternatively, I strike the Supplemental Objections as untimely filed.

Leave to Amend accordingly. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008) ("Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim.").

During the hearing, AUSA Lacosta explained the discretionary nature of cooperation and the filing of Rule 35 or § 5K1.1 motions for substantial assistance and described the many factors that go into the government's decision to file such a motion. AUSA Lacosta emphasized that the government has "a professional reason to deal honestly with the defendants" pursuing cooperation, but noted that "sometimes … it doesn't work out." [ECF No. 25, pp. 69–70].   Contrary to Palacios' assertion, the transcript does not reveal some undisclosed policy decision by the government to disallow Palacios' cooperation before Palacios entered into the plea agreement, nor does the transcript reveal any unconstitutional motive behind the government's eventual decision to not pursue cooperation with Palacios.   Further, to the extent Palacios alleges the government acted in bad faith in not pursuing cooperation, in the Eleventh Circuit, bad faith alone is insufficient to warrant review of the government's failure to file a Rule 35 or § 5K1.1 motion. *See United States v. Forney*, 9 F.3d 1492, 1502 (11th Cir. 1993) ("[J]udicial review is appropriate when there is an allegation [of bad faith] *and* a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion.") (emphasis added); *United States v. Scott*, 184 F. App'x 916, 918–19 (11th Cir. 2006) (rejecting defendant's argument that a district court is empowered to examine for "good faith" a prosecutor's refusal to file a substantial assistance motion); *see also United States v. Munoz-Realpe*, 21 F.3d 375, 379 n.7 (11th Cir.1994) (sentencing court may

not depart downward pursuant to § 5K1.1 for substantial assistance without a government motion, unless the court finds the government's refusal to file such motion was based on an unconstitutional motive) (citing *Wade v. United States*, 504 U.S. 181, 184-86, 112 S. Ct. 1840, 1843-44, 118 L. Ed. 2d 524 (1992)).  I conclude Palacios' Motion, grounded in a misunderstanding of the government's position at the February 9, 2012 evidentiary hearing, is baseless, and I deny the Motion accordingly.[3]

## III.   Analysis

Palacios' habeas petition presents seven grounds for relief.  I have conducted a de novo review of Palacios' Objections, as required by the Eleventh Circuit's mandate, and although I agree with Magistrate Judge White's ultimate conclusion that Palacios' request for habeas relief should be denied, as explained herein, I do not concur with all of Judge White's analysis.  I start my discussion with Grounds 1, 2, and 5, all of which concern Palacios' written plea agreement.

### A.      Grounds 1, 2, and 5 – Plea Agreement

Grounds 1, 2, and 5 of Palacios' habeas petition concern his written plea agreement [ECF No. 8-6].  The plea agreement states the United States and Palacios

---

[3] Even if I granted the Motion, Palacios new claims do not relate back under Federal Rule of Civil Procedure Rule 15(c) because they are supported by facts that differ in both time and type from those set forth in the original pleading.  *See, e.g., Davenport v. United States*, 217 F.3d 1341 (11th Cir. 2005); *Daniel v. United States*, No. 08–20702–CIV, 2010 WL 1796800 (S.D. Fla. May 3, 2010).  As such, the new claims would be time-barred.  Moreover, to the extent Palacios asserts he only through the February 2010 evidentiary hearing came to know that the government was not interested in pursuing cooperation with Palacios after he entered his guilty plea or after his sentencing, this assertion is belied by the record, *see, e.g.,* ECF Nos. 8-1, 25, which demonstrates Palacios knew by May/June 2008 that the government was no longer interested in cooperation.

agree to recommend at the time of sentencing a base offense level of 26 (because the quantity of laundered funds exceeded $2.5 million) and a 6-level enhancement (because the laundered funds were the proceeds of an offense involving a controlled substance) (¶8).   The agreement permits the government to "make any recommendations as to the quality and quantity of punishment," "[s]ubject only to the express terms of any agreed-upon sentencing recommendations contained in [the] agreement."  (¶6).   The agreement contains a sentencing provision (¶3; *see also* ¶12) stating Palacios understands the court has the authority to impose any sentence within and up to the statutory maximum and Palacios may not withdraw the plea solely as a result of the sentence imposed.   The agreement further states the United States will recommend a three-level reduction based on Palacios' acceptance of responsibility (¶7), and the United States reserves the right to evaluate Palacios' cooperation and move pursuant to § 5K1.1 of the Sentencing Guidelines or a Rule 35 motion for reduction of sentence (¶10).   Finally, the plea agreement contains an appellate waiver (¶13), wherein Palacios waives the right to appeal his sentence unless the sentence exceeded the statutory maximum or was the result of an upward departure, or the government appealed.

Having set forth the key provisions of the written plea agreement, I turn to Palacios' claims regarding the agreement.  By way of background, from commencement of suit until entry of his guilty plea, Palacios was represented by attorney Humberto Dominguez, who spoke Spanish.   After entry of the guilty plea, Palacios was represented by attorney Martin Roth.

In Ground 1, Palacios asserts he did not knowingly, intelligently, and voluntarily plead guilty due to counsel's misrepresentation of the plea agreement.   Specifically,

Palacios claims he entered a guilty plea based on counsel Dominguez' assurances that Palacios would be sentenced to 87 to 108 months and the government would not seek an enhancement for leadership.  [ECF No. 1 at 6, 12].  In Ground 2, Palacios asserts counsel Martin Roth was aware of Dominguez' misrepresentation of the terms of the plea agreement, and was constitutionally ineffective when he failed to file a motion to withdraw the guilty plea and plea agreement.  In Ground 5, Palacios argues Roth was constitutionally ineffective in failing to file a motion to enforce the plea agreement and object to the government's breach of the agreement as written.  Magistrate Judge White recommends denial of all three Grounds.

Having conducted a de novo review of Palacios' Objections and Grounds 1, 2, and 5, and having conducted an evidentiary hearing on Ground 5, I deny Palacios' Motion to Vacate on all three Grounds.   With respect to Ground 5, I conclude the government did not breach the plea agreement by seeking enhancements that were not specified in the plea agreement, and Palacios' counsel was not constitutionally ineffective in failing to object to the government's breach.  I deny Palacios' Motion to Vacate with regards to Grounds 1 and 2 because Petitioner's sworn testimony at the plea colloquy belies any argument that counsel's misrepresentation as to his sentence induced Palacios to plead guilty.

1.    **Ground 5 – Failure of Trial Counsel to File Motion to Enforce Plea Agreement and Object to Government's Breach of the Plea Agreement**

In Ground 5, Palacios argues counsel was constitutionally ineffective in failing to file a motion to enforce the plea agreement and object to the government's breach of the agreement as written.  Palacios' plea agreement states the following:

8.      The United States and the defendant agree to make the following sentencing recommendations to the Court at the time of sentencing:

      a.      Base Offense Level: As to Counts 1–48, the United States and the defendant agree that the quantity of laundered funds exceeded $2.5 million, resulting in a base offense level of 26, pursuant to U.S.S.G. § 2S1.1(a)(2); and

      b.      U.S.S.G. § 2S1.1(a)(1): As to Counts 1–48, the United States and the defendant agree that the defendant knew or believed that the laundered funds were the proceeds of, or were intended to promote, and offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical.   Accordingly, the 6-level enhancement set forth in this subsection applies.

[ECF No. 8-6 at 5, ¶ 8].  Additionally, paragraph 6 of the plea agreement states,

6.      The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

[ECF No. 8-6 at 4, ¶ 6].

Palacios argues the government breached paragraph 8 of the plea agreement by seeking a 4-point enhancement for leadership role and a 4-point enhancement for business of laundering funds (both of which I granted).  [ECF No. 8-14, pp. 119; 125–26].  The record reflects, and the government does not dispute, that the government explicitly advocated for the leadership and business of laundering funds enhancements in its response to Palacios' objections to the PSI [06-cr-20081, ECF No. 130] and at sentencing [ECF No. 8-13, *e.g.* pp. 8–13, 83–96; ECF No. 8-14, pp. 14–19].

Magistrate Judge White recommends denial of Ground 5 because nowhere in the plea agreement does it state the government would not seek enhancements in order to

induce the movant to plead guilty.  Palacios objects on the grounds that he was led to believe the plea agreement contained an exhaustive list of enhancements.

The parties agree on the standard governing breach of plea agreements.  *See generally* ECF Nos. 75, 79.  "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induced the defendant to plead guilty."  *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996).  "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea."  *Id.* (citation omitted).  In interpreting a written plea agreement, the court should not engage in a "hyper-technical" reading of the agreement, nor should it accept "a rigidly literal approach in the construction of language."  *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990) (citation omitted).  Additionally, the written agreement should be viewed against the background of the negotiations and should not be interpreted to directly contradict an oral understanding.  *Id.* (citation omitted).  Parol evidence may be considered where the agreement is ambiguous, or when government overreaching is alleged.  *Raulerson v. United States*, 901 F.2d 1009, 1012 (11th Cir. 1990).  Ambiguities in a plea agreement are resolved against the government.  *Jefferies*, 908 F.2d at 1523.

Applying these principles to Palacios' case, I conclude the government did not breach the plea agreement by seeking enhancements for leadership and business of laundering funds.  I rely first on the plain language of the plea agreement, and conclude the unambiguous terms of the agreement permit the government to seek enhancements beyond those specified in paragraph 8(b) of the agreement.  I additionally conclude, based on the testimony presented at the August 31, 2012 evidentiary hearing, that, against the backdrop of the parties' negotiations, Palacios' reasonable understanding at

the time he entered into the agreement was that the government was permitted to seek enhancements for leadership role and business of money laundering.

In evaluating the plain language of the plea agreement, I follow the reasoning of the Eleventh Circuit's unpublished decision in *United States v. Flint*, 142 F. App'x 435 (11th Cir. 2005).   Although *Flint* is not binding on this court, in the absence of any binding authority to the contrary, I apply it here because of its strong factual similarities to Palacios' case.   Pursuant to a written plea agreement, Flint pled guilty to conspiracy to possess with intent to distribute 5 kilograms of cocaine and 50 grams or more of cocaine base.  *Id.* at 436.   As part of the plea agreement, the United States and Flint agreed they would jointly recommend that the court make certain findings regarding the quantity of narcotics, resulting in a base offense level of 32; that Flint should not receive a role adjustment pursuant to Sections 3B1.1 or 3B1.2 of the Sentencing Guidelines; and that there is no other basis for downward departure.  *Id.*  The government also agreed to recommend that Flint receive a 3-level reduction for acceptance of responsibility and that Flint be sentenced at the low end of the Guidelines range.  *Id.* Like Palacios' plea agreement, Flint's plea agreement stated that "[s]ubject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendations as to the quality and quantity of punishment."  *Id.*

Flint's Presentence Investigation Report recommended a base offense level of 32, and also that Flint was a career offender.  *Id.* at 437.   At the sentencing hearing, the government supported the PSI's classification of Flint as a career offender, and Flint objected, reasoning that because the parties had agreed to a base offense level of 32, the government breached the plea agreement by advocating the career offender

enhancement. *Id.* The district court overruled Flint's objection and sentenced him as a career offender. *Id.*

On appeal, the Eleventh Circuit concluded the government did not breach the plea agreement:

> First, the plea agreement did not contain any agreement as to Flint's total offense level or his criminal history category. … Further, the government expressly reserved the right to inform the district court regarding all facts pertinent to Flint's sentencing, including Flint's background. The government also expressly reserved the right to make other sentencing recommendations subject only to its drug quantity, role adjustment, and downward departure recommendations.

*Id.* at 438.

As in *Flint*, Palacios' plea agreement did not contain any agreement as to Palacios' total offense level or ultimate sentence. *Cf. Taylor*, 77 F.3d at 369–71 (where government agreed to recommend a sentence of ten years, government breached plea agreement by supporting PSI's guidelines range of 188 to 235 months); *United States v. Rivera*, 357 F.3d 290, 295 (3d. Cir. 2004) (where government agreed to recommend *total* offense level of 35, government breached plea agreement by endorsing enhancements that would raise total offense level to 39). The government expressly reserved the right to inform the court regarding all facts pertinent to Palacios' sentencing, and also expressly reserved the right to make any recommendations as to the quality and quantity of punishment, subject only to its base offense level and proceeds of money laundering enhancements. Accordingly, I conclude that the government did not breach the terms of the plea agreement by advocating leadership role and business of money laundering enhancements.

Additionally, evaluating the plea agreement against the backdrop of the parties' negotiations, as presented at the August 31, 2012 evidentiary hearing, I conclude

Palacios' reasonable understanding at the time he entered into the plea agreement was that the government was permitted to seek leadership role and business of money laundering enhancements.   During the August 31 hearing, I heard testimony from Petitioner Palacios, attorneys Humberto Dominguez and Martin Roth (both of whom represented Palacios in the criminal proceedings), and attorney Gustavo Garcia-Montes (who represented Palacios' co-defendant brother in the criminal proceedings).   I note first that, upon careful observation of the witnesses' demeanor and consideration of the record as a whole, including the evidence presented during the hearing, I do not find Palacios' testimony credible.   I instead credit the testimony of Dominguez and Roth, which testimony was corroborated by the evidence of record as well as the testimony of Garcia-Montes, and conclude the relevant facts are as follows.

Palacios was initially represented by attorney Humberto Dominguez.  Early in the representation, Palacios expressed interest in cooperating with the government, and by July 2007, the parties were negotiating a plea agreement.   The government's first proposed agreement included an enhancement for leadership role.   Palacios did not want to accept a leadership role enhancement and refused to accept the agreement.

Thereafter, in a letter dated August 20, 2007 [ECF No. 79-1], the government provided two plea options.  Option 1 provided that each defendant would plead guilty to the money laundering counts, and the government would drop the narcotics count. During sentencing, both parties could raise any arguments regarding "role, particular enhancements, etc. …." [ECF No. 79-1 at 1].

Option 2 provided that each defendant would plead guilty to the money laundering counts, and the government would agree to recommend that the "base offense level be calculated by using the money identified in the indictment,

approximately $3,000,000, and that the <u>base</u> offense level should therefore be level 26." [ECF No. 79-1, at 1–2 (emphasis in original)].   Each defendant would agree to the enhancement for proceeds of money laundering, and the parties "will then be free to raise any additional arguments at sentencing regarding role, the remaining potential enhancement, etc...."   [ECF No. 79-1 at 2].

Dominguez reviewed the August 20, 2007 letter and each option with Palacios at a joint defense meeting among the three co-defendants and their counsel.   Both Dominguez and Garcia-Montes testified that, at this meeting, it was explained and understood that Option 2 would leave open litigation of additional enhancements, including leadership role.   Palacios chose Option 2.

Once Option 2 was memorialized into a written plea agreement, Dominguez reviewed with Palacios each paragraph of the written plea agreement, including paragraph 6, which provided the government the right to make any recommendation as to quality and quantity of punishment.   In explaining Option 2 of the August 20, 2007 letter and the plea agreement, Dominguez never represented to Palacios that the government would not seek leadership role and business of money laundering enhancements.   To the contrary, Dominguez advised Palacios that the government would seek these two enhancements, and each of the enhancements would be a battle.

After the plea colloquy, Palacios fired Dominguez and hired attorney Martin Roth. Palacios expressed disappointment to Roth that, despite Palacios' attempts to cooperate with the government, the government sought (and Palacios received) enhancements for leadership and business of money laundering.   Palacios and Roth discussed filing a motion to withdraw the plea agreement.   In evaluating the agreement, Roth did not reach the conclusion that the plain language of the agreement precluded

the government from seeking role and business of money laundering enhancements. Additionally, Palacios never expressed an understanding that the government agreed in the plea agreement not to seek those enhancements.  Ultimately, Palacios opted to continue cooperating with the government rather than to file a motion to withdraw the plea agreement.

Based on the testimony presented at the evidentiary hearing, including (1) Dominguez and Garcia-Montes' testimony that it was discussed at the joint defense meeting that Option 2 left open for litigation additional enhancements; (2) Dominguez' testimony that he explained to Palacios before entry of Palacios' plea that the government would seek leadership role and business of money laundering enhancements, and these enhancements would be a battle; and (3) Roth's testimony that Palacios never expressed an understanding that the government agreed in the plea agreement not to seek additional enhancements, I conclude it was not Palacios' actual understanding—much less his *reasonable* understanding—that the plea agreement foreclosed the government from seeking leadership and business of money laundering enhancements.  While Palacios did not want to accept a leadership enhancement, he understood that this enhancement would be litigated at sentencing.  Further, I disagree with Palacios' contention that the government waived the right to litigate at sentencing the leadership role and business of money enhancement because it did not use the exact language of Option 2 in the plea agreement.  As explained above, the plain language of the written plea agreement does not preclude the government from seeking those enhancements.

To establish ineffective assistance of counsel, Palacios must show that his counsel's performance was deficient, which means that it "fell below an objective

standard of reasonableness" and was "outside the wide range of professionally competent assistance," and, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Palacios meets neither prong of this test. Because the government did not breach the plea agreement, Roth's failure to object to a breach of the agreement or file a motion to enforce the agreement was objectively reasonable. Roth's actions were also objectively reasonable because Palacios himself elected to pursue further cooperation rather than file a motion regarding the plea agreement. Finally, Palacios cannot show prejudice because any motion to enforce the plea agreement or objection to the government's breach would have been denied. *See Burgess v. Terry*, No. 09-11935, 2012 WL 1889716, at *2 (11th Cir. May 25, 2012) (holding trial counsel was not constitutionally ineffective because, even if "trial counsel had done everything exactly as [petitioner] now contends he should have, there is no reasonable probability of a different result …."); *United States v. Cook*, 163 F.3d 1354 (5th Cir. 1998) (holding counsel's failure to object to presentence investigation report was not ineffective assistance of counsel because objection would have been overruled).

## 2.    Grounds 1 and 2 – Voluntariness of the Plea Agreement

I turn next to Grounds 1 and 2 of the habeas petition. In Ground 1, Palacios claims he did not knowingly, intelligently, or voluntarily plead guilty due to counsel's misrepresentation of the plea agreement. Magistrate Judge White examined the Rule 11 plea colloquy and concluded Palacios' guilty plea was valid. In his Objections, Palacios argues the affirmative misrepresentation of counsel as to the terms of the plea agreement is legally sufficient to warrant vacatur, or, at a minimum, Ground 1 warrants

an evidentiary hearing.  Palacios does not address in his Objections his testimony at the plea colloquy.

In Ground 2, Palacios argues counsel Martin Roth was aware of Dominguez' misrepresentation of the terms of the plea agreement, and was constitutionally ineffective when he failed to file a motion to withdraw the guilty plea and plea agreement.  As with Ground 1, Judge White recommends denial of Ground 2 because Palacios provided insufficient evidence of counsel Dominguez' representations and Palacios' reliance thereon to overcome Palacios' sworn testimony at the plea colloquy, and Roth was not ineffective for failing to file a motion to withdraw the guilty plea and plea agreement.  Further, Judge White concludes, there was no prejudice because the Court would not have granted a motion to withdraw the guilty plea.  Palacios contends in his Objections that he has put forth sufficient evidence regarding Dominguez' misrepresentations to refute the plea colloquy and, at a minimum, warrant an evidentiary hearing.

I note first that the appellate waiver in Palacios' plea agreement (even if deemed valid) does not preclude a § 2255 challenge to the validity of his guilty plea (as opposed to the validity of his sentence).  *See Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007).  *Cf. Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) (valid sentence appeal waiver precludes defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing).  Notwithstanding, having conducted a de novo review of Grounds 1 and 2, I concur with Magistrate Judge White that Palacios is not entitled to an evidentiary hearing, and Palacios has failed to establish that his plea agreement was invalid.

19

*Strickland's* two-part performance and prejudice test applies where a prisoner contends that ineffective assistance led him or her to enter an improvident guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). "Legal representation does not pass constitutional muster where an attorney blatantly misstates to a client the penalty provisions of the crime with which the client is charged." *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989). While a plea induced by the misrepresentations of counsel is ineffective, *see United States v. French*, 719 F.2d 387, 390 (11th Cir. 1983), there is a strong presumption that statements made during the plea colloquy are true, and, consequently, a defendant bears a heavy burden to show that his statements under oath were false. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). To that end, summary dismissal of a petitioner's allegations without evidentiary hearing is appropriate when those allegations, when viewed against the record of the plea hearing, are "palpably incredible," or "patently frivolous or false." *Blackledge v. Allison*, 431 U.S. 63, 76, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). "A[n] [evidentiary] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

As discussed in Magistrate Judge White's Report, during the plea colloquy [ECF No. 8-7], Palacios acknowledged under oath that the indictment had been translated into Spanish for him, and he understood that his actual sentence could be higher or lower than the guidelines range. He denied that anyone had made any promise or guarantee as to what his actual sentence would be, and denied being forced, threatened, or coerced into entering a guilty plea. Petitioner stated he understood the

statements by the court and the government that he faced a maximum 20 years for each count to which he pled guilty.  Regarding the appeal waiver, Petitioner testified he understood he could appeal only if the sentence imposed was above the statutory maximum or was based on an upward departure from the guidelines range, or if the government appealed.

I agree with Judge White that Palacios' testimony during the plea colloquy demonstrates that Palacios' plea was knowing, voluntary, and intelligent.  Further, in the face of his testimony at the plea colloquy, Palacios' assertion that counsel made promises regarding his sentence or enhancements does not warrant an evidentiary hearing.  *See Saunders v. United States*, 278 F. App'x 976, 978 (11th Cir.2008) (hearing not required where petitioner's allegations are affirmatively contradicted by the record).  Because Palacios' plea was valid, I concur with Judge White that counsel Roth was not ineffective for failing to file a motion to withdraw the guilty plea and plea agreement, as I would have denied such a motion.  *See Burgess*, 2012 WL 1889716, at *2.  Finally, to the extent Palacios argues his plea was invalid because he understood the government would not seek a leadership enhancement, as set forth in my discussion of Ground 5, Palacios understood at the time he entered his guilty plea that the government would seek this enhancement.

### B.      Ground 7 – Failure of Trial Counsel to File a Notice of Appeal

In Ground 7, Palacios argues trial counsel Martin Roth was constitutionally ineffective because he failed to file a notice of appeal after being instructed to do so. Magistrate Judge White held an evidentiary hearing on Ground 7, and, in the Report, credited the testimony of counsel Martin Roth that Palacios never directed counsel to

file an appeal or indicated he wanted to pursue a direct appeal.[4]   Judge White further

noted that, even if Palacios was silent on whether he wished to file an appeal, Mr. Roth

did not, on the facts of this case, have a duty to consult with Palacios on filing an

appeal.   Palacios objects to Judge White's credibility determination and requests a

second evidentiary hearing before me so I can independently assess his credibility [ECF

No 28, pp. 5–6].

Having conducted a de novo review of the record, including the transcript of the

evidentiary hearing and Palacios' Objections, I concur with Magistrate Judge White's

ultimate conclusion that Mr. Roth was not ineffective in failing to file a notice of appeal.

---

[4] During the hearing, Palacios testified regarding the plea agreement and the appellate waiver contained therein.  According to Palacios, although his initials appeared on every page of the written plea agreement, the contents were never read or translated to him, he relied on attorney Dominguez' explanation of the plea agreement, and Dominguez expressed that Petitioner waived his appellate rights only if his sentence did not exceed 87 months.  Palacios further testified that, after he received a sentence of 210 months, he immediately directed Roth to file a notice of appeal, and Roth told him he could not file an appeal because Palacios had waived his appellate rights.  Palacios testified he repeatedly insisted Roth file an appeal, notwithstanding the waiver in the plea agreement.

Martin Roth testified that, after Palacios' sentence was pronounced, Palacios was extremely disappointed with his sentence.  Roth visited Petitioner and discussed the possibility of filing an appeal.  Roth noted an appeal would most likely be futile because of the appellate waiver, and instead recommended pursuing further cooperation with the government.   It was decided Palacios would meet with Isaac Rodriguez, Roth's paralegal, to discuss all possible areas of cooperation.  Roth recognized at the time that the Miami United States Attorney's Office had already made clear that it did not consider Palacios suitable for cooperation.   Roth further testified that Palacios never instructed him to file a Notice of Appeal, and that he was not aware of *Santos* at the time of the sentencing.

Roth's paralegal Isaac Rodriguez corroborated the testimony of Roth.   Rodriguez testified that Roth discussed with Palacios the appellate waiver and cooperation and Palacios chose cooperation.

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).  Here, Judge White, after having "attended to the testimony at the evidentiary hearing, the witnesses' demeanor and the record as a whole," credited the testimony of Martin Roth that Palacios never directed him to file a notice of appeal or indicated he wanted to file an appeal.  The record supports Magistrate Judge White's findings, and I defer to Judge White's credibility determination, made after listening to the full testimony and observing the witnesses' demeanor, and in light of all of the evidence presented at the hearing.  *See United States v. Raddatz*, 447 U.S. 667, 677–680, 100 S. Ct. 2406 (1980) (holding district court has discretion to accept magistrate judge's findings without conducting a hearing and viewing witnesses itself); *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (stating that credibility determinations are within the province of the fact finder and should not be disturbed).  I therefore deny Palacios' request for a second evidentiary hearing.

Even though Palacios did not specifically instruct Roth to file a notice of appeal, Roth had a constitutional duty to consult with Palacios about his appeal because Roth knew Palacios was extremely disappointed with his sentence.  *See Thompson v. United States*, 504 F.3d 1205, 1208 (11th Cir. 2007) (concluding counsel had "clear duty to consult" with his client about an appeal when client expressed he was "unhappy" with his sentence); *see also Flores-Ortega*, 528 U.S. at 480 (duty to consult triggered where there is reason to think a rational defendant would want to appeal, or this particular defendant reasonably demonstrated to counsel that he was interested in appealing); *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005) (even if a rational

23

defendant would not have wanted to appeal the case, if petitioner expressly communicated to his attorney his desire to appeal, duty to consult is triggered). Indeed, the Supreme Court stated its expectation "that courts evaluating the reasonableness of counsel's performance … will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481.

The Supreme Court has defined the term "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. Here, Roth discussed with Palacios the futility of an appeal in light of the appellate waiver in the plea agreement, and the possibility of pursuing cooperation instead. After Palacios discussed with Roth's paralegal all possible areas of cooperation, Palacios chose to pursue cooperation instead of filing a direct appeal. *See, e.g.,* ECF No. 25; ECF No. 8-1 (June 4, 2008 letter from Roth to government stating Palacios' willingness to cooperate). On these facts, I conclude Roth adequately consulted with Palacios and, with regards to Ground 7, Roth's performance was not objectively unreasonable.[5] *See Lucas v. Secretary Dept. of Corrections*, --- F.3d ----, 2012 WL 2053300, *10 (11th Cir.

---

[5]  To the extent Palacios argues Roth failed to satisfy the duty to consult because he did not inform Palacios of the *Santos* decision, I disagree. *Santos*, if read properly, *see United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009) (explaining how to read the fragmented Court opinions), does not afford Palacios, whose proceeds were the result of drug trafficking, not unlicensed gambling, any relief. *See infra* III.C. As such, given the appellate waiver in the plea agreement and *Santos'* narrow scope, Palacios cannot demonstrate that he would have appealed even if he were advised of *Santos*. *See Gomez-Diaz*, 433 F.3d at 792 ("[T]o satisfy the prejudice prong of the *Strickland* test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed.").

June 8, 2010) ("Because a petitioner's failure to show either deficient performance or prejudice is fatal to a *Strickland* claim, we need not address both *Strickland* prongs if the petitioner fails to satisfy either of them.").

### C.    Ground 6 – *United States v. Santos*

Palacios asserts in Ground 6 that he is actually innocent in light of *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008) because the money he laundered did not involve profits (as opposed to revenue).[6]   Palacios further argues that counsel Dominguez and Roth rendered ineffective assistance of counsel in failing to advise Palacios of the pendency of *Santos*, and had he been aware of the case, he "would not have pled guilty nor [would] the court have accepted the guilty plea or sentenced" him.   [ECF No. 1, p. 17].   Judge White recommends denial of Ground 6 because it was not ineffective assistance of counsel to fail to foresee a change in the law, and Palacios is not actually innocent because the Eleventh Circuit has refused to extend *Santos* to money laundering cases in which the proceeds come from drug trafficking.   In his Objections, Palacios argues counsel should have foreseen the change in law because *Santos* was pending while Palacios' case was open, and maintains that *Santos* applies to his case.

Palacios was indicted on February 7, 2006, pled guilty on August 28, 2007, and was sentenced on May 22, 2008.   In *Santos*, decided on June 2, 2008, the Supreme Court addressed the meaning of the word "proceeds" as used in 18 U.S.C. §

---

[6] Although the government generally referred to the funds at issue as "proceeds" during its factual proffer, it also, without objection or clarification of defendants' counsel, referred to the funds as "profits." [ECF No. 8-7, p. 34 ("The money was thus profits from the sales and then used to reinvest in the drug cycle.")].

1956(a)(1)(A)(i), which makes it a crime for someone to, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[ ] or attempt[ ] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... with the intent to promote the carrying on of a specified unlawful activity."  The money laundering transaction at issue in *Santos* involved proceeds from an illegal gambling operation.  *Santos*, 128 S. Ct. at 2022–23.  A plurality of four Justices ruled that the word "proceeds" as used in the money laundering statute meant profits and not gross receipts.  *Id.* at 2023–25.  Justice Stevens wrote a concurring opinion ruling "proceeds" meant "profits" in the context of some specified unlawful activities, and gross receipts as to others, and that, with regard to the gambling offenses at issue in *Santos*, proceeds meant profits.  *Id.* at 2031–33.  Four Justices dissented, holding that the word "proceeds", as used in 18 U.S.C. § 1956(a)(1)(A)(i), meant gross receipts.  *Id.* at 2034–44.

In *United States v. Demarest*, the Eleventh Circuit Court of Appeals held *Santos* "has limited precedential value" and "[t]he narrow holding in *Santos*, at most, was that the gross receipts of an unlicensed gambling operation were not 'proceeds' under section 1956...."  570 F.3d 1232, 1241–42 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 421, 175 L. Ed. 2d 272 (2009).  Because the funds at issue in *Demarest* were the proceeds of an enterprise engaged in illegal drug trafficking, not unlicensed gambling, the Eleventh Circuit held that *Santos* did not invalidate Demarest's conviction.  *Id.*

Similar to *Demarest*, the proceeds in Palacios' case were not related to unlicensed gambling.  *Santos* is therefore inapplicable to Palacios' case.  "Proceeds" includes receipts as well as profits, and Palacios was properly convicted of money laundering.  *See, e.g., United States v. Tobin*, 676 F.3d 1264 (11th Cir. 2012) (holding

district court did not err in refusing to define the term "proceeds" as "profits" because case involved distribution of controlled substances rather than an illegal gambling business); *United States v. Sarcona*, 457 F. App'x 806, 815 (11th Cir. 1012) ("In non-gambling contexts, we remain bound by a definition of proceeds that 'includes receipts as well as profits.'").[7]

Turning to Palacios' argument that counsel should have foreseen the change in law because *Santos* was pending while his case was open, I disagree.  Under Eleventh Circuit precedent, counsel is not ineffective for failing to anticipate changes in the law. *See United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (holding that "we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel") (citations omitted).  "That rule applies even if the claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it."  *Id.*; *see also Bajorski v. United States*, 276 F. App'x 952, 954 (11th Cir. 2008) ("Even if the anticipated change in law is reasonably available at the time counsel failed to raise it, such failure does not constitute ineffective assistance." (citation omitted)).

---

[7] Palacios argues in his Supplemental Objections that *Demarest* was wrongly decided [ECF No. 53, p. 25].  As indicated by the recent Eleventh Circuit cases cited *supra*, *Demarest* remains the law in this circuit.

Further, Palacios' argument that he is actually innocent because he did not agree at sentencing to "those portions of the government's proffer that would support a factual basis of the charges" [ECF No. 53, p. 25] is without merit.  At sentencing, Palacios' counsel clarified that Palacios was responsible for only a small portion of the drugs and money in a certain bodega [ECF No. 8-7, p. 43], Palacios did not claim he lacked knowledge of the full remainder of the proffer.  Rather, he admitted to the proffer "as to [his] knowledge of what has been said against [him]," with the sole aforementioned clarification [*Id.* at 43–44].

In *Pitts v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991), petitioner Pitts filed a habeas petition arguing counsel was ineffective for failing to present in the jury selection process a *Batson* challenge.  *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) was announced in April 1986, during the pendency of Pitts' appeal. The Eleventh Circuit concluded that a *Batson*-type claim was reasonably available to petitioner in 1985 because there was "all this activity in the area by others who perceived and litigated *Batson*-type claims."  *Pitts*, 923 F.2d at 1573.  Notwithstanding, the court held "counsel's pre-*Batson* failure to raise a *Batson*-type claim does not fall below reasonable standards of professional competence, and thus does not render counsel's assistance constitutionally ineffective."  *Id.* at 1574.  "[L]aw is not an exact science," and "an ordinary, reasonable lawyer may fail to recognize or to raise an issue, even when the issue is available, yet still provide constitutionally effective assistance." *Id.* at 1573–74 (citation omitted).  *Pitts* forecloses Palacios' argument that trial counsel was constitutionally ineffective for failing to advise him of the pendency of *Santos*, even though *Santos* was pending before the Supreme Court during Palacios' case.

Moreover, Palacios' citation to *Perez v. Dept. of Corrections*, 227 F. Supp. 2d 1289 (S.D. Fla. 2002) is unavailing.  Although defense counsel in *Perez* was found ineffective for "fail[ing] to take the appropriate steps to keep Petitioner's appeal alive in light of the state of the law under reconsideration by the Florida Supreme Court, and counsel's failure to even advise his client of his available options," the court's finding of counsel's ineffectiveness substantially relied on counsel's failure to disclose his involvement in writing a "supplemental brief in *Gray* asking the Florida Supreme Court to overrule *Amlotte*, the very decision upon which Perez' conviction for attempted felony murder was predicated."  *Id.* at 1306, 1310.  The *Perez* court found counsel ineffective

not only because of his special relationship to the pending case law relevant to his client's case, but also because he failed "to discharge that which the state and professional norms expected of him" with respect to Perez' available appellate remedies. *Id.* at 1309. In contrast to *Perez*, Palacios does not claim that his counsel had a special relationship to the *Santos* case pending before the Supreme Court, nor does he argue counsel was ineffective for failing to disclose Palacios' available remedies. Accordingly, *Perez* is inapplicable to the instant case and I decline to depart from the well-established Eleventh Circuit case law holding counsel is not ineffective for failing to foresee a change in law.

Not only is Palacios' failure to show objectively unreasonable performance fatal to his *Strickland* claim, but Palacios has also failed to show prejudice. Palacios argues that, had he known about the pendency of *Santos*, he would not have entered a guilty plea. To establish prejudice, Palacios must show that, had he known about the pendency of *Santos*, he would have gone to trial and been acquitted, or, if convicted, obtained a shorter sentence than he received through the plea agreement. *See Evans v. Meyer*, 742 F.2d 371, 375 (11th Cir. 1984). *Cf. Lafler v. Cooper*, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (to show prejudice from standing trial instead of accepting plea offer, defendant must show not only that he would have accepted the offer, but also that the court would have accepted its terms and the sentence would have been less severe than the sentence actually imposed). Based on the factual proffer presented by the government, with which Palacios agreed (bar one minor exception as to the portion of drugs and money in a particular bodega attributable to Palacios [ECF No. 8-7, p. 43; ECF No. 8-13, p. 22]), it is inconceivable that Palacios would have stood trial, been acquitted, and obtained a sentence more favorable than

that obtained through entry of the guilty plea.  *See, e.g.*, *Morgan v. Israel*, 735 F.2d 1033, 1036 (7th Cir. 1984); *Evans*, 742 F.2d at 375.  Indeed, the Eleventh Circuit has consistently held that *Santos* does not apply to drug-trafficking related money laundering, and, had Palacios stood trial, *Santos* would not have helped him obtain an acquittal.

### D.      Grounds 3 and 4 – Motions for Downward Departure

Palacios asserts in Ground 3 that counsel Martin Roth was constitutionally ineffective in failing to file a motion to compel the government to file, pursuant to the plea agreement, a motion for downward departure under U.S.S.G. § 5K1.1.  Similarly, in Ground 4, Palacios asserts counsel was constitutionally ineffective in failing to file a motion for downward departure pursuant to U.S.S.G. § 5K2.0, contending his cooperation with the government was a valid basis for a § 5K2.0 motion.  Magistrate Judge White recommends denial of Ground 3, as any § 5K1.1 motion is within the government's discretion, and, moreover, the plea agreement expressly reflects the discretionary nature of any § 5K1.1 motion the government would file.  As to Ground 4, Judge White recommends denial because § 5K2.0 does not authorize departures for substantial assistance.  Palacios did not object to Judge White's analysis of Grounds 3 and 4.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985) ("The statute [28 U.S.C. § 636] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection.").

As Magistrate Judge White explained in the Report, the instant plea agreement contains no promise to file a § 5K1.1 motion, and instead provides the government full discretion to file a § 5K1.1 motion, stipulating it is in the "sole and unreviewable

judgment" of the government to file a § 5K1.1 motion, and "nothing in this Agreement may be construed to require [the government] to file such a motion." [ECF No. 8-6, p. 5, ¶ 10]. The agreement further reserves for the government the "right" (not the obligation) to make Palacios' cooperation, or lack thereof, known to the court. [*Id*.]. Where, as here, the plea agreement contains no promise to file a substantial assistance motion, the government's failure to file such a motion is reviewed only for "a constitutionally impermissible motivation, such as race, religion, or other arbitrary classification" or the absence of a rational relation to a legitimate government purpose.[8] *See United States v. Davis*, 359 F. App'x 128, 130 (11th Cir. 2010) (citations omitted). Petitioner's general assertions that the government breached the plea agreement by failing to move for downward departure, without more, does not entitle him to relief or an evidentiary hearing. *See Wade*, 504 U.S. at 186 ("[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive."). Accordingly, I conclude the government did not breach the plea agreement by failing to move for downward departure due to substantial assistance and reject Palacios' claim that counsel was ineffective for failing to file a motion to compel the government to file a motion for downward departure.

Turning to Ground 4, § 5K2.0 permits a court to depart from the sentencing guidelines when there exists "an aggravating or mitigating circumstance of a kind, or to

---

[8] To the extent Palacios attempts to argue, based on Assistant United States Attorney Anthony Lacosta's statements at the February 9, 2010 evidentiary hearing, that the government had some unconstitutional motive, as explained *supra* in my analysis of Palacios' Rule 15(a) motion, I disagree.

a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."   Because § 5K2.0 does not authorize departures for substantial assistance, *see, e.g., United States v. Duffy*, 179 F.3d 1304, 1305 n.1 (11th Cir. 1999); *Munoz-Realpe*, 21 F.3d at 379–80; *United States v. Chotas*, 968 F.2d 1193, 1196 (11th Cir. 1992), Palacios' counsel was not constitutionally ineffective for failing to file a § 5K2.0 motion based on Palacios' substantial assistance.[9]

## IV.   Conclusion

In sum, I adopt the ultimate conclusion of Magistrate Judge White's Report and Recommendation, as set forth herein, and deny Palacios' Motion to Vacate on all Grounds.   It is hereby ORDERED and ADJUDGED as follows:

1.     The Report and Recommendation [ECF No. 23] is **AFFIRMED and ADOPTED** to the extent set forth herein.

2.     Petitioner's Motion to Vacate, Set Aside and/or Correct Judgment and Sentence Pursuant to 28 U.S.C. § 2255 [ECF No. 1] is **DENIED** as to all Grounds.

3.     Petitioner's Motion for Leave to Amend under Rule 15(a) [ECF No. 51] is **DENIED**.

4.     Palacios' Supplemental Objections [ECF No. 53] are **STRICKEN**.

---

[9] To the extent Palacios argues his trial counsel should have made the court aware of his cooperation, Palacios has not shown *Strickland* prejudice from counsel's failure to do so.

DONE and ORDERED in Chambers in Miami, Florida, this 31st day of October, 2012.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE


cc:     All counsel and parties of record
        Magistrate Judge Patrick A. White
        Clerk of Court for the Eleventh Circuit Court of Appeals
                (relates to your Case No. 10-21509)

        Ricardo Mauricio Bernal Palacios
        Prisoner ID: 79388-004
        Unit C-3
        FCC - Coleman (Low)
        Federal Correctional Complex
        P. O. Box 1031, Coleman FL
        33521-1031